1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

DANIEL GARZA,

              Plaintiff,

    v.

BRINDERSON CONSTRUCTORS, INC., et al.,

              Defendants.

Case No.  15-cv-02661-RMW

**ORDER GRANTING MOTION TO REMAND**

Re: Dkt. Nos. 37, 42

Plaintiff Daniel Garza filed a class action complaint in Monterey County Superior Court on April 16, 2015, alleging that defendants failed to provide meal and rest periods, failed to pay premium wages for unprovided meal and rest periods, failed to pay at least minimum wages for all hours worked, failed to pay overtime wages, failed to reimburse for all necessary business expenses, and failed to provide accurate written wage statements. Dkt. No. 1-1. On June 12, 2015, defendants Brinderson L.P., Inc. and Brinderson Constructors, Inc. removed to federal court on the basis of diversity jurisdiction under the Class Action Fairness Act. Dkt. No. 1. Plaintiff now moves to remand. Dkt. No. 37. Brinderson L.P. opposes the motion to remand and also moves to consolidate this action with *Daniel Garza v. Brinderson Constructors, Inc., Brinderson L.P., Brinderson L.P., Inc. and Chevron U.S.A., Inc.*, N.D. Cal., Case No. 15-cv-05742-HRL. Dkt. Nos. 40, 42. The court grants plaintiff's motion to remand because Brinderson has not established that

1

the parties are diverse. Furthermore, even if Brinderson had established diversity jurisdiction, the court finds that the home state controversy exception would require remand. Because the case is remanded, the court does not reach Brinderson's motion to consolidate.

## I.   BACKGROUND

Plaintiff originally filed this action in state court, alleging violations of the California Labor Code and the California Business & Professions Code against defendants Brinderson Constructors, Inc., Brinderson, L.P., Inc., and Chevron, Inc. Dkt. No. 1-1. Plaintiff's allegations include failure to provide meal and rest periods, failure to pay hourly and overtime wages, failure to reimburse for cell phone charges and uniforms, and failure to provide accurate wage statements. *Id.* Before defendants removed to federal court, plaintiff amended the complaint to add an eighth cause of action for civil penalties. *See* Dkt. No. 1-2. Both the original complaint and the amended complaint indicate that the aggregate claim of the putative class is under the $5,000,000.00 threshold for federal jurisdiction under the Class Action Fairness Act of 2005. *See* Dkt. No. 1-1 ¶ 3; Dkt. No. 1-2 ¶ 3.

In the notice of removal, Brinderson L.P., Inc. and Brinderson Constructors, Inc. claim that the jurisdictional requirements 28 U.S.C. § 1332(d) are met because 1) there are 100 or more putative class members; 2) the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs; and 3) members of the putative class are citizens of a state different from defendants. Dkt. No. 1 ¶ 16.

Following removal, the parties stipulated to allow plaintiff to file a Second Amended Complaint ("SAC") in order to 1) remove the allegations against Brinderson Constructors, Inc.; 2) correct the naming of defendant "Brinderson L.P., Inc." to "Brinderson L.P." and 3) correct the naming of "Chevron, Inc." to "Chevron U.S.A., Inc." *See* Dkt. No. 25. In the SAC, plaintiff alleges that "[t]his Court has subject matter jurisdiction to hear this case because Defendant has removed this case pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)." Dkt. No. 26 ¶ 2. The SAC does not allege an amount in controversy.

## II.  ANALYSIS

Plaintiff argues that this case must be remanded because Brinderson has failed to establish

1    1) that the amount in controversy exceeds $5,000,000, and 2) that the parties are diverse. Plaintiff

2    further argues that even if Brinderson could meet the jurisdictional requirements of 28 U.S.C. §

3    1332(d)(2), this court must decline to exercise jurisdiction because of the home state controversy

4    exception. *See* 28 U.S.C. § 1332(d)(4)(B). Brinderson responds that it has met its burden for both

5    the amount in controversy and diversity requirements, and that plaintiff has failed to meet his

6    burden to show that the home state controversy exception applies.

7         Brinderson suggests that this court should view plaintiff's arguments regarding lack of

8    subject matter with "extreme skepticism" because plaintiff waited six months from removal to

9    move to remand and admitted in the Second Amended Complaint that this court "has subject

10   matter jurisdiction to hear this case because Defendant has removed the case pursuant to the Class

11   Action Fairness Act of 2005, U.S.C. § 1332(d)." Dkt. No. 40 at 5 (citing SAC ¶ 2). While a district

12   court may rely on a judicial admission by plaintiff as to the amount in controversy, the Ninth

13   Circuit has made it clear that "a defect in jurisdiction" cannot "be avoided by waiver or

14   stipulation." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376-77 (9th Cir. 1997) (citing

15   *Cripps v. Life Ins. Co. of North America,* 980 F.2d 1261, 1264 (9th Cir.1992)); *see also* 28 U.S.C.

16   § 1447 ("If at any time before final judgment it appears that the district court lacks subject matter

17   jurisdiction, the case shall be remanded."). The court does not read the SAC as a judicial

18   admission as to the amount of controversy or any other fact underlying the existence of subject

19   matter jurisdiction under the CAFA. *See Redding v. Hitachi Am., Ltd.*, 69 F. App'x 887, 888 (9th

20   Cir. 2003) (affirming district court's holding that defendant's statement in its answer that "the

21   citizenship of the litigants is diverse" not a factual admission"). The court considers the merits of

22   plaintiff's subject matter jurisdiction arguments.

23         **A.      Removal Jurisdiction under the Class Action Fairness Act**

24         Brinderson, as the removing party, has the burden of establishing a prima facie showing of

25   federal jurisdiction under the CAFA. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir.

26   2007) (citing *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 683-85 (9th Cir. 2006)).

27   However, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to

28

United States District Court
Northern District of California

3

facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). A "court may properly consider evidence the removing party submits in its opposition to remand, even if this evidence was not submitted with the original removal petition." *Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, at *3 (N.D. Cal. June 14, 2013) (citing *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n. 1 (9th Cir. 2002)).

### 1.    Amount in Controversy

Plaintiff argues that Brinderson has not established the amount in controversy. Dkt. No. 37 at 5; Dkt. No. 45 at 6. "[T]he proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard." *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013).

Brinderson puts forth three separate calculations for the amount in controversy. In its first calculation, Brinderson assumes that each putative class member missed one meal break and one rest period for each workweek. Dkt. No. 1 ¶ 14(e). Based on the average hourly rate for non-exempt employees of $25.27, Brinderson calculates that once per week meal and rest break violations would put a total of $8,082,558.96 at issue. *Id.* ¶¶ 14(c)-(e). In a second proposed calculation, Brinderson assumes a 100% violation rate for meal breaks, relying on its understanding that "the focus of Plaintiff's meal break claim is an alleged inability to leave the premises," which Brinderson claims "would potentially put every meal period at issue." Dkt. No. 40 at 11 (citing Dkt. No. 40-2 (Jaskowiak Decl.) ¶ 4). According to Brinderson's payroll data, there were 604,240 shifts over five hours worked by putative class members during the relevant period. *Id.* at 11 (citing Dkt. No. 40-1 (Marcotte Decl.) ¶ 10). Again using the average hourly rate for putative class members, Brinderson reaches a total of $15,269,144.00 for all shifts over five hours and, to account for possible meal period waivers executed by putative class members, an alternative total of $14,556,985.00 for all shifts of six hours. *Id.* at 11 and n.6. In its third proposed calculation, Brinderson calculates an amount based on the waiting time penalties sought by plaintiff. Relying on the allegations in the complaint, Brinderson assumes that each "Waiting Time Penalty Class" member suffered a willful violation and calculated claimed penalties of

4

$6,568,178. *Id.* at 11.

In his reply brief, plaintiff argues that Brinderson "fails to cure the fatal flaw in its evidence of the $5,000,000 amount-in-controversy: its assumptions about how many class members missed meal and rest breaks are unfounded." Dkt. No. 45 at 6. Plaintiff raises no other objections to Brinderson's calculations. While the court is not convinced that Brinderson has a basis for the assumption a violation for a meal period violation for every shift, the court finds that Brinderson has established by a preponderance of the evidence that the amount in controversy exceeds $5,000,000 through both its weekly violation calculation and its waiting time penalty calculation.[1]

### a.  100% Violation Rate Calculation

Brinderson bases its assumption that a meal break violation occurred during every shift on its understanding that "the focus of Plaintiff's meal break claim is an alleged inability to leave the premises, which would potentially put every meal period at issue." Dkt. No. 40 at 11. While such allegations could "potentially" put every meal period at issue, the court finds nothing in the complaint demonstrating that plaintiff alleges a 100% violation rate.

The Ninth Circuit held that "a 'pattern and practice' of doing something does not necessarily mean *always* doing something," and that under such circumstances, the defendant "bears the burden to show that its estimated amount in controversy relied on reasonable assumptions." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1198-99 (9th Cir. 2015) ("While it is true that the complaint alleges that Manheim maintains 'an institutionalized unwritten policy that mandates' the employment violations alleged in the complaint, including the denial of

---

[1] Although each of these calculations involves only a subset of plaintiff's claims, each independently suffices to establish the amount in controversy requirement. *See Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015) ("Although the complaint alleged multiple labor law violations, including failure to pay minimum wages and overtime, failure to provide meal and rest periods, failure to furnish compliant wage statements, and failure to pay timely wages upon termination, Manheim calculated the potential damages only for its alleged meal and break period violations and contends that the amount in controversy for the meal and break penalties alone exceeds $5 million. If so, for purposes of assessing CAFA jurisdiction, there is no need to calculate damages on other claims.").

5

1   meal and rest periods, this does not mean that such violations occurred in each and every shift.").

2   In this case, the SAC alleges that plaintiff Daniel Garza "*regularly* worked shifts of eight to twelve

3   hours per day, without being afforded a meal break during the first five hours, and/or a second

4   meal break after ten hours, as required by California law." Dkt. No. 26 ¶ 10 (emphasis added). The

5   SAC further alleges that defendants "maintained a policy or practice" of meal break violations

6   with respect to the class. Dkt. No. 26 ¶ 28. Because the SAC does not allege universal violations,

7   Brinderson has not established a reasonable basis for its assumption of a 100% violation rate.

8   Therefore, Brinderson may not rely on such calculations to meet the amount in controversy

9   requirement.

### b. Weekly Violation Rate Calculation

11          In contrast, the court finds that Brinderson's assumption that each putative class member

12   missed one meal break and one rest period per workweek is reasonable. Plaintiff correctly points

13   out that that the Ninth Circuit has rejected similar calculations because the defendant "failed to

14   provide any evidence regarding why the assumption that each employee missed two rest periods

15   per week was more appropriate than one missed rest period per paycheck or one missed rest period

16   per month." *See* Dkt. No. 45 at 6 (citing *Garibay v. Archstone Communities LLC*, 539 F. App'x

17   763, 764 (9th Cir. 2013)). The Ninth Circuit did find a basis, however, for an assumption that

18   "each claimant missed at least one rest break and one meal break per week" where the complaint

19   alleged that defendant "regularly and consistently failed to provide uninterrupted meal and rest

20   periods" and class representatives had testified in depositions that they were "never" allowed to

21   take meal or rest breaks. *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012). In

22   this case, plaintiff does not allege that class members were "never" permitted breaks, but plaintiff

23   does allege that he "regularly" missed meal breaks and that defendants maintained a "policy or

24   practice" of both meal and rest break violations. *See* Dkt. No. 26 ¶¶ 10, 28, 37, 56. Brinderson's

25   assumption of one violation per week is reasonable based on the allegations of the SAC. *See, e.g.*,

26   *Arreola v. Finish Line*, No. 14-CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9,

27   2014) (finding that pleading "regular or consistent practice" supports assumption that every class

28

6

15-cv-02661-RMW
ORDER GRANTING MOTION TO REMAND
FC

member "experienced at least one violation once per week"). Therefore, Brinderson's calculations based on weekly violations are sufficient to establish the threshold amount by a preponderance of the evidence.

### c.  Waiting Time Penalty Calculation

Moreover, Brinderson also establishes that the threshold amount is met by its third calculation. The SAC defines the putative "Waiting Time Penalties Class" as "[a]ll Hourly Employee Class members who separated from their employment with Defendants during the period beginning three years before the filing of this action and ending when final judgment is entered." Dkt. No. 26 at 3, ¶ 12. The "Hourly Employee Class" is defined as "[a]ll persons employed by Defendant in hourly or non-exempt positions in California during the Relevant Time Period." *Id.* The SAC does not narrow the subclass further, alleging that "at all relevant times, Defendants have failed to timely pay Waiting Times Penalties Class members all of their final wages." *Id.* ¶ 79. Plaintiff alleges that the violations were willful. *Id.* ¶ 81. Relying on these definitions and allegations, Brinderson reaches a potential amount in controversy of $6,568,178. Dkt No. 40 at 11. Brinderson notes that this estimate does not include the additional penalties sought by plaintiff. *Id.*

In *Garibay*, the Ninth Circuit rejected an assumption "that each employee would be entitled to the maximum statutory penalty" where defendant provided "no evidence supporting that assertion." *Garibay*, 539 F. App'x at 764. In this case, however, the allegations in the complaint support Brinderson's contention. Plaintiff has not submitted any argument or evidence disputing this calculation with his reply, nor does plaintiff offer any alternative calculation in a lower amount for waiting time penalties. *See Ibarra v. Manheim Investments, Inc.*, 775 F.3d at 1197 (if defendant's asserted amount in controversy is challenged, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.") (quoting *Dart*, 135 S.Ct. at 554). Therefore, the court finds that Brinderson's waiting time penalty calculation is sufficient to satisfy the amount in controversy requirement.

15-cv-02661-RMW
ORDER GRANTING MOTION TO REMAND
FC

United States District Court
Northern District of California

### 2.     Diversity

Under the CAFA, this court has diversity jurisdiction over a class action in which the amount in controversy exceeds $5,000,000 if "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). The parties do not dispute that the remaining defendants—Brinderson L.P. and Chevron U.S.A., Inc.—are citizens of California. Plaintiff argues that Brinderson has established that any plaintiff is citizen of a state other than California. *See* Dkt. No. 40 at 8-9; Dkt. No. 45 at 5-6.

As the party asserting diversity jurisdiction, Brinderson bears the burden of proof on diversity of citizenship. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857-58 (9th Cir. 2001) ("[T]he party asserting diversity jurisdiction bears the burden of proof."). Brinderson must establish diversity of citizenship by a preponderance of the evidence. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992) ("court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence") (quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *Williams v. Sugar Hill Music Publ'g, Ltd.*, No. C 05-03155 CRB, 2006 WL 1883350, at *6 (N.D. Cal. July 7, 2006) ("burden of establishing diversity is on the party seeking to invoke it and it must be proved by a preponderance of the evidence").

"To demonstrate citizenship for diversity purposes a party must (a) be a citizen of the United States, and (b) be domiciled in a state of the United States." *Lew v. Moss,* 797 F.2d 747, 749 (9th Cir. 1986). A person is domiciled "in a location where he or she has established a fixed habitation or abode in a particular place, and [intends] to remain there permanently or indefinitely." *Id.* at 749–50. "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." *Kanter*, 265 F.3d at 857; *see also Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 885-86 (9th Cir. 2013) (noting that Ninth Circuit has "not yet" adopted the presumption that evidence of a person's residence is "prima facie evidence of the person's domicile"). Rather, a person's domicile is determined by a number of factors, none of them controlling, including: "current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and

8

1   family, membership in unions and other organizations, place of employment or business, driver's

2   license and automobile registration, and payment of taxes." *Lew*, 797 F.2d at 750.

3         Brinderson asserts at least one current, non-exempt California employee is a citizen of a

4   state other than California. Dkt. No. 40 at 9. Brinderson relies on the declaration of its Human

5   Resources Business Partner to show that an unnamed employee class member is a citizen of

6   Washington. The declaration states that the following personnel records establish the employee's

7   Washington domicile: "(1) IRS Form W-4s that were executed by this individual on November 25,

8   2013, December 14, 2014, February 10, 2015, and May 12, 2015 identifying a Sedro Woolley,

9   Washington address as his home address; (2) a Brinderson 'Hire Authorization Form'—which is a

10  form used to assign an individual to a specific job—which was executed by this individual on

11  September 18, 2015 and contains the same Sedro Woolley, Washington address as his home

12  address; (3) a copy of a Washington driver's license with an issuance date of April 11, 2013 that

13  contains the same Sedro Woolley, Washington address as his address; and (4) a copy of a motor

14  vehicle title application and registration certificate from Washington with an issuance date of

15  April 2011." *Id.* at 9.

16        The W-4s and Hire Authorization Form suggest that the employee maintains a residence in

17  Washington. The same home address appears in documents evidencing the employee's 2013

18  Washington driver's license and 2011 automobile registration, also in Washington. The evidence

19  regarding residence, driver's license, and automobile registration weigh in favor of a finding of

20  domicile in Washington.

21        However, plaintiff challenges Brinderson's residence showing, arguing that it is

22  implausible on its face that the employee worked at any of Brinderson's California locations while

23  commuting from a residence hundreds of miles away in Sedro Woolley, Washington. *See* Dkt. No.

24  45 at 5-6. The complaint restricts the class to those employed by Brinderson in California. *See*

25  Dkt. 26 ¶ 12. Place of employment is another factor relevant to domicile, and in this case, the

26  unnamed employee must be employed in California, which weighs against a finding of

27  Washington domicile.

28

9

United States District Court
Northern District of California

The court concludes that Brinderson's evidence is not sufficient to establish the employee's Washington citizenship by a preponderance of the evidence. Brinderson is the only party with access to the unnamed employee, and is in the best position to establish the employee's state of citizenship. Yet Brinderson did not submit a declaration from the employee regarding the employee's residency or intent to remain. While Brinderson's evidence does suggest that the employee maintains a residence in Washington, Brinderson has not established that the employee intends to reside in Washington indefinitely. *See, e.g., Kanter*, 265 F.3d at 857 (9th Cir. 2001) ("A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state."); *Int'l Cultural Exch. Grp. v. Harifa, Inc.*, No. 5:14-CV-03014-PSG, 2014 WL 5454380, at *3 (N.D. Cal. Oct. 27, 2014) ("Neither the complaint nor any declaration from Lin or Chu speaks to intent and thus does not prove that either Lin or Chu is anything more than a resident of Georgia."). Weighing the evidence of residence against the employment evidence, the court finds it equally likely that the unnamed employee is domiciled in California. Furthermore, Brinderson has made no showing that the employee is a citizen of the United States—which is also required for establishing the employee's Washington citizenship. *Lew*, 797 F.2d at 749 ("To demonstrate citizenship for diversity purposes a party must (a) *be a citizen of the United States*, and (b) be domiciled in a state of the United States.") (emphasis added). While the evidence submitted presents a close question, Brinderson has not carried its burden to establish diversity jurisdiction.

### B.    Home State Controversy Exception to CAFA Diversity Jurisdiction

Furthermore, even if Brinderson has established diversity by a preponderance of the evidence, the court finds it appropriate to permit plaintiff to clarify that the class definitions include only California citizens and to remand on the basis of the home state exception.

The CAFA includes several statutory exceptions to diversity jurisdiction, including the "home state exception" and the "local controversy exception." In this case, plaintiff relies on the home state exception. Dkt. No. 37 at 8-9; Dkt. No. 45 at 1. Under the home state exception, a "district court shall decline to exercise jurisdiction" if at least two-thirds of the putative class

15-cv-02661-RMW
ORDER GRANTING MOTION TO REMAND
FC

members and the "primary" defendants are citizens of the state in which the action was filed. 28 U.S.C. § 1332(d)(4)(B). The parties do not dispute that all defendants are California citizens; therefore, there is no dispute that the "primary defendants" are citizens of California. Brinderson claims, however, that plaintiff has waived the home state exception and the plaintiff has not met its burden to show that at least two-thirds of the putative class members are California citizens.[2]

## 1. Waiver

Brinderson argues that plaintiff has waived any exception to CAFA jurisdiction by not bringing this motion within a reasonable time. Dkt. No. 40 at 5, 12. There is no statutory time limit for bringing a motion to remand based on an exception to CAFA jurisdiction, but other circuit courts have held that such motions must be brought in a reasonable time, and Ninth Circuit case law suggests the same analysis. *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 142 (2d Cir. 2013) (holding that home state exception is not jurisdictional and that parties invoking \exception must do so within reasonable time); *Graphic Commc'ns Local 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 636 F.3d 971, 975-76 (8th Cir. 2011) (local controversy exception is not jurisdictional and must be raised within a reasonable time); *see Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 869 (9th Cir. 2013) (stating that "local controversy" exception is not jurisdictional"); *Kamm v. ITEX Corp.*, 568 F.3d 752, 757 (9th Cir. 2009) (holding that motion to remand based on forum selection clause—a non-procedural-defect, non-jurisdictional motion—must be raised within a reasonable time).[3]

_____

[2] While plaintiff relies on the "home state exception," Brinderson's opposition brief refers only to "local controversy" exception. The two concepts are distinct under the statute, but each exception would require plaintiff to prove that at least two-thirds of the proposed class is comprised of California citizens. Therefore, the analysis for purposes of this motion is the same, and the court will treat Brinderson's arguments as if made with respect to the home state exception.

[3] Plaintiff argues that waiver of an exception to CAFA jurisdiction also requires a showing of prejudice. Dkt. No. 45 at 2. However, the cases cited by plaintiff do not suggest that the court must consider prejudice in determining whether a motion to remand was brought within a reasonable time. *See Winston v. Superior Court*, 196 Cal. App. 3d 600, 602 (Ct. App. 1987) (holding that trial court abused discretion by denying relief from inadvertent waiver of right to jury trial where there had been no prejudice to other party); *Jarvis v. Allstate Ins. Co.*, 2013 WL 587325 at *3 (D. Mont. 2013) (considering waiver of right to rely on exclusion provision of insurance policy); *Fisher v. BNP Paribas,* 791 F.2d 691, 694 (9th Cir. 1986) ("party seeking to prove waiver of a right to arbitration must demonstrate," among other things, prejudice to opposing party).

15-cv-02661-RMW
ORDER GRANTING MOTION TO REMAND
FC

1    Brinderson's argues that plaintiff waited an unreasonable amount of time—173 days—

2   after removal before filings its motion to remand, "especially in light of his active litigation of this

3   case in federal court and the fact that the Motion to Remand is not based on any new

4   developments in the case." Dkt. No. 40 at 12. Plaintiff argues that the delay cannot be deemed

5   unreasonable because the litigation is still in the early stages and because "any delay was fully

6   justified by the need to ensure that the proper parties were in the case," which only happened when

7   Chevron USA Inc. was added by stipulation on October 28, 2015. Dkt. No. 45 at 2.

8    The court finds that the timing of plaintiff's motion was not unreasonable because it was

9   filed 35 days after the Second Amend Complaint and while this case is still in the early stages of

10   motions practice and discovery. *See Graphic Commc'ns Local 1B Health & Welfare Fund "A" v.*

11   *CVS Caremark Corp.*, No. CIV. 09-2203 MJD/JSM, 2011 WL 5826687, at *3 (D. Minn. Oct. 13,

12   2011), *report and recommendation adopted sub nom. Graphic Commc'ns Local 1B Health &*

13   *Welfare Fund A v. CVS Caremark Corp.*, No. CIV. 09-2203 MJD/JSM, 2011 WL 5827182 (D.

14   Minn. Nov. 18, 2011) (finding three months after removal reasonable given early stage of

15   litigation); *cf. Barfield v. Sho-Me Power Elec. Co-op.*, No. 2:11-CV-04321-NKL, 2014 WL

16   1343092, at *2 (W.D. Mo. Apr. 4, 2014) (finding twenty-six month delay unreasonable where

17   discovery has been extensive and parties had "invested hundreds of hours on motions to dismiss, a

18   motion to sever, issues of class certification, and motions for summary judgment, as well as many

19   ongoing procedural details").

20    **2.    Two-Thirds Citizenship Requirement**

21    Plaintiff argues that it has met its burden so show that that more than two-thirds of the

22   putative class members are California citizens because 1) all class members are California

23   employees, 2) Brinderson's California facilities are all located "such that commuting from a

24   different state would only be possible by helicopter or private jet," and 3) Brinderson has only

25   identified one California employee that it contends is domiciled outside of the state. Dkt. No. 45 at

26   1. Although it is very likely that two-thirds of the putative class members are California citizens,

27   these allegations are not sufficient to meet plaintiff's burden of proof on a CAFA exception.

28

United States District Court
Northern District of California

In considering the two-thirds requirement of the local controversy exception, the Ninth Circuit held that "there must ordinarily be at least some facts in evidence from which the district court may make findings regarding class members' citizenship." *Mondragon*, 736 F.3d at 884. In *Mondragon*, the Ninth Circuit rejected the district court's finding that the class definitions—which limited putative class membership to consumers who purchased and registered cars in California— were sufficient to establish the two-thirds citizenship requirement for local controversy exception. 736 F.3d at 881-884. The Ninth Circuit acknowledged that the district court's inference from the class definitions was "understandable;" yet the court concluded that there was "simply no evidence in the record to support a finding that the group of citizens outnumbers the group of non-citizens by more than two to one," noting that cars may have been "purchased and registered in California by members of the military, by out-of-state students, by owners of second homes, by other temporary residents who maintained legal citizenship in other states, and by person who live in California but are not U.S. citizens." *Id.* 884.

Similarly in this case, some of Brinderson's California employees may commute from other states, may temporarily reside in California while maintaining legal citizenship in other states, or may be California residents who are not U.S. citizens. This court cannot infer citizenship based on plaintiff's current California employee class definitions alone. *See Serrano v. Bay Bread LLC*, No. 14-CV-01087-TEH, 2014 WL 1813300, at *2 (N.D. Cal. May 6, 2014), *certificate of appealability denied* (Aug. 22, 2014) (plaintiffs did not meet burden on local controversy exception because they "failed to put forth any evidence, and instead rely solely on the fact that the plaintiff class was employed in California"); *Aviles v. Quik Pick Express, LLC*, No. CV-15-5214-MWF (AGR), 2015 WL 5601824, at *3 (C.D. Cal. Sept. 23, 2015) ("putative class definition regarding California residents, rather than citizens, is insufficient alone to establish the two-thirds California *citizens* requirement"). Even accepting plaintiff's representation that the Brinderson locations within California make commuting from another state unlikely, plaintiff has not submitted evidence to show that two-thirds of the putative class members are not temporary California residents or non-U.S. citizens. As it is plaintiff's burden to show an exception to CAFA

15-cv-02661-RMW
ORDER GRANTING MOTION TO REMAND
FC

United States District Court
Northern District of California

1    jurisdiction, plaintiff cannot rely on Brinderson's failure to identify class members who are

2    citizens of other states.

3        The cases cited by plaintiff, *Romo v. Panda Rest. Grp., Inc.*, No. CV 12-00996 GAF OPX,

4    2012 WL 3930346 (C.D. Cal. Sept. 7, 2012) and *Kastroll v. Wynn Resorts, Ltd.*, No. 2:09-CV-

5    2034-LDG-VCP, 2013 WL 496409 (D. Nev. Feb. 6, 2013), are unavailing. These cases not only

6    predate the *Mondragon* decision, they also involve some type of residency evidence beyond class

7    definitions for the putative employee classes. *See Romo*, 2012 WL 3930346 at *4 ("likelihood that

8    4,620 members of [estimated 14,000 California employees] are not California citizens, particularly

9    given the statistical data [regarding interstate migration patterns], is highly unlikely"); *Kastroll*,

10   2013 WL 496409 at *4 (considering "documented residencies of current employees").

11   Furthermore, as plaintiff points out, the *Romo* court appears to have initially inferred California

12   residency based on California employment— an inference which is not permitted in the absence of

13   additional evidence. *See Serrano v. Bay Bread*, 2014 WL 1813300 at *2 ("fact that the plaintiff

14   class was employed in California" not sufficient to "establish the initial domicile of the class

15   members").

16       However, plaintiff also requests leave to amend his complaint to clarify that the class is

17   intended to be a class of California citizens and asks the court to remand on that basis. Dkt. No. 45

18   at 1 n.1. In *Mondragon*, the Ninth Circuit indicated that "pure inference regarding the citizenship

19   of prospective class members may be sufficient if the class is defined as limited to citizens of the

20   state in question." 736 at 881-82. The Ninth Circuit has also held that "plaintiffs should be

21   permitted to amend a complaint after removal to clarify issues pertaining to federal jurisdiction

22   under CAFA." *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1117 (9th Cir. 2015). Several

23   district courts in this circuit have permitted clarifying amendments that restrict a class to a state's

24   "citizens." *See, e.g.*, *Turner v. Corinthian Int'l Parking Servs., Inc.*, No. C 15-03495 SBA, 2015

25   WL 7768841, at *3 (N.D. Cal. Dec. 3, 2015) (denying motion to remand without prejudice to

26   ability to renew after filing amended complaint clarifying class definition); *In re Anthem, Inc.*, No.

27   15-CV-2873-LHK, 2015 WL 5265686, at *5 (N.D. Cal. Sept. 9, 2015) (granting motion to remand

28

United States District Court
Northern District of California

14

after considering clarifying amendment because citizenship of class "only became relevant when Defendants sought removal"); *Aviles*, 2015 WL 5601824 at *5 (granting to leave for clarifying amendment where all claims for relief arise under California law and all allegations involve performing services for defendant in California).

This court, therefore, concludes that leave to amend is appropriate in this case, and that such amendment serves as an additional basis for remand. *See Smilow v. Anthem Blue Cross Life & Health Ins. Co.*, No. CV 15-4556-MWF(AGRX), 2015 WL 4778824, at *6 (C.D. Cal. Aug. 13, 2015) (granting leave to amend, deeming complaint "amended to refer to California "citizens" rather than "residents," and granting motion to remand).

## III. CONCLUSION

For these reasons, the court grants plaintiff's motion and remands the case to Superior Court of the State of California for the County of Monterey. Accordingly, the court does not consider Brinderson's motion to consolidate.

**IT IS SO ORDERED.**

Dated: April 4, 2016

Ronald M. Whyte
United States District Judge

15-cv-02661-RMW
ORDER GRANTING MOTION TO REMAND
FC